**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BRYANT BRADLEY, *et al.*,

Plaintiff,

v. 9:24-cv-1529 (AMN/CBF)

T.G. HARRIGAN, *et al.*,

Defendants.

**APPEARANCES:** **OF COUNSEL:**

**BRYANT BRADLEY**
00-A-1300
Eastern NY Correctional Facility
P.O. Box 338
Napanoch, NY 12458
Plaintiff *pro se*

**KATISHA S. RUSSELL-BRADLEY**
P.O. Box 2577
Bloomfield, NJ 07003
Plaintiff *pro se*

**HON. LETITIA JAMES**
New York State Attorney General
The Capitol
Albany, New York 12224
*Attorneys for Defendants*

**CHI-HSIN E. ENGELHART, ESQ.**
Assistant Attorney General

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On December 17, 2024, plaintiffs *pro se* Bryant Bradley ("Bradley") and Katisha S. Russell-Bradley ("Russell-Bradley") (collectively, "Plaintiffs") commenced this action pursuant to 42 U.S.C. § 1983 and New York state law in connection with alleged misconduct that occurred

at the Clinton Correctional Facility ("Clinton") and the Sullivan Correctional Facility ("Sullivan") from April 8, 2022 through early 2023. *See* Dkt. No. 1. Bradley, who was incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at all relevant times, was granted permission to proceed *in forma pauperis* ("IFP"), *see* Dkt. Nos. 5, 8, while Russell-Bradley paid the filing fee.

On April 30, 2025, the Court conducted an initial review of Bradley's claims pursuant to 28 U.S.C. § 1915. *See* Dkt. No. 8. Though the Court dismissed several of Bradley's Section 1983 claims and declined to exercise supplemental jurisdiction over a state law claim, *see id.* at 14-16, 19-20, 22-24, it permitted other claims to proceed against defendants Tanie Harrigan ("Harrigan"), Mark McConnell ("McConnell"), Donita McIntosh ("McIntosh"), Marie-Josee King ("King"), Adam Frenya ("Frenya"), Stacie Bennett ("Bennett"), Kevin Santo ("Santo"), Michael Miner ("Miner"), Jesse LaMora ("LaMora"), Donald Mitchell ("Mitchell"), Lisa Geppinger ("Geppinger"), and Anthony Rodriguez ("Rodriguez") (collectively, "Defendants"), *see id.* at 25. On October 6, 2025, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 40 ("Motion"). The parties fully briefed the Motion. *See* Dkt. Nos. 40-3, 46, 47.

This matter was referred to United States Magistrate Judge Carla B. Freedman, who, on August 26, 2026, issued a Report-Recommendation and Order ("Report-Recommendation") recommending that Defendants' Motion be partially granted and partially denied. *See* Dkt. No. 51. Magistrate Judge Freedman advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days to file written objections to the Report-Recommendation, or seventeen days if service was done by mail, and that failure to object to the Report-Recommendation within the applicable period would preclude appellate review. *Id.* Defendants timely filed their objections

on September 9, 2026. *See* Dkt. No. 52. On the day the seventeen-day period was to expire, September 14, 2026, *see* Fed. R. Civ. P. 6(a)(1)(C), Plaintiffs requested an extension of time to object to the Report-Recommendation. *See* Dkt. No. 53. The Court granted that extension, *see* Dkt. No. 54, and on September 22, 2026, Plaintiffs filed a memorandum of law with their objections to the Report-Recommendation and their opposition to Defendants' objections, *see* Dkt. No. 55.

For the reasons set forth below, the Court partially adopts and partially rejects the Report-Recommendation.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, if an objection simply rehashes arguments originally presented to the magistrate judge, this Court reviews the relevant portions of the report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-1138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289,

295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal[.]" *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Familiarity with both the Report-Recommendation, *see* Dkt. No. 51, and the Court's memorandum-opinion and order on initial review under 28 U.S.C. § 1915, *see* Dkt. No. 8, are presumed for purposes of this decision. The Court adopts those aspects of the Report-Recommendation to which no party has raised a specific objection unless otherwise specified below, including the background and the legal framework, finding no clear error therein. The Court first addresses the claims brought by Bradley and then the claims brought by his wife, Russell-Bradley.

### A. Bradley's Claims

This case involves two periods of Bradley's detention at Clinton and Sullivan in 2022 and 2023. First, Bradley alleges that after correction officers reported evidence of a drug exchange during a contact meeting between Bradley and Russell-Bradley at Clinton—evidence which Plaintiffs contend was falsified—Bradley was examined for contraband and then placed into a

Special Watch Dry Cell ("dry cell") for four to five days. *See* Dkt. No. 51 at 2-4. Second, following his time in the dry cell, Bradley alleges that he was subject to a detention hearing and found to have smuggled contraband into Clinton, whereupon he received a punitive period of detention in a Special Housing Unit ("SHU") for 180 days. *See* Dkt. No. 51 at 4-6. Bradley also alleges that he was placed into a "mental health" Correctional Alternative Rehabilitation ("CAR") program at Sullivan for approximately two-and-a-half months. *See* Dkt. No. 51 at 6.

Bradley raises several Section 1983 claims under the Eighth and Fourteenth Amendment, challenging both his pre- and post-hearing detentions. In Magistrate Judge Freedman's Report-Recommendation, she recommended that several of Bradley's claims should survive Defendant's Motion. With regard to Bradley's detention in the dry cell, Magistrate Judge Freedman recommended that both an Eighth Amendment conditions of confinement claim, *see* Dkt. No. 51 at 19-21, and a Fourteenth Amendment due process claim, *see id.* at 24-26, should survive dismissal. And as to Bradley's 180 days in the SHU, Magistrate Judge Freedman similarly recommended that an Eighth Amendment excessive restrictive confinement claim, *see id.* at 21-24, and a Fourteenth Amendment disciplinary due process claim, *see id.* at 26-32, should survive dismissal. Finally, Magistrate Judge Freedman recommended that a due process claim regarding Bradley's placement in the CAR program should also survive dismissal. *See id.* at 32-33.

Bradley also brings a First Amendment claim regarding limitations placed on his contact with Russell-Bradley as a result of the detention hearing's outcome, but Magistrate Judge Freedman determined that the claim failed as a matter of law and recommended that it be dismissed. *See id.* at 15-18.

With the exception of Bradley's due process challenge against the officer who conducted the detention hearing, Defendants object to all portions of the Report-Recommendation in which

Magistrate Judge Freedman recommended that Section 1983 claims should survive dismissal. *See generally* Dkt. No. 52. For their part, Plaintiffs both object to the recommended dismissal of Bradley's First Amendment claim and contest Defendants' objections. *See generally* Dkt. No. 55.

The Court first addresses those claims arising from Bradley's detention in the dry cell, then the claims arising from his detention hearing and placement in the SHU, followed by the due process claim arising from his CAR placement, and finally his First Amendment claim.[1] For the reasons that follow, this Court dismisses all of Bradley's Section 1983 claims except for the due process claim against his hearing officer.

**1. Placement into the dry cell**

Bradley alleges that, on April 8, 2022, following a contact meeting at Clinton between Bradley and Russell-Bradley, Correction Sergeant Santo falsely reported that a drug-sniffing dog indicated narcotics on Russell-Bradley and a countertop near Bradley. Dkt. No. 1 at 8-9. Bradley was then subject to a series of invasive examinations and placed into a specialized "dry cell" for monitoring. *Id.* at 9, 25. Bradley was "pat-frisked, hand-scanned, . . . strip-frisked," received a body orifice scan, and volunteered to undergo an X-ray examination, all of which returned negative results for contraband. *Id.* at 9-10, *see* Dkt. No. 1-2 at 6. Following Santo's report and throughout the battery of examinations, Bradley was constantly in mechanical constraints under the "custody and watch" of correction officials, and "no contraband [was ever] found." *Id.* at 10. Despite the negative examination results, Deputy Superintendent Frenya ordered Bradley placed into the dry cell for monitoring after Santo had it searched for contraband. *Id.* at 9-10, *see* Dkt. No. 1-2 at 2.

The dry cell was a "completely bare" room constantly lit by overhead lights. *Id.* at 10.

[1] Because the Court adopts the background and the account of the underlying facts from the Report-Recommendation, *see* Dkt. No. 51 at 2-10, it recounts those facts only as necessary for the present analysis.

Bradley was "forced to sit . . . without any clothing except a smock," given no toiletries, and monitored by three video cameras for a four to five day period beginning on April 8, 2022, until he completed a requisite number of bowel movements without producing any contraband. *Id.* Bradley alleges that detainees ordinarily need to provide two negative stool samples to be released from the dry cell, but he had to provide four. *Id.* Bradley asked McIntosh and Frenya "why he was on special watch when no evidence provided probable cause," but they "[b]oth walked away from Bradley without comment." *Id.* at 10. On Bradley's second day in the dry cell, April 10, 2022, he alleges that correction officers McConnell and Miner recovered "three pieces of metal" from his dry cell, *see id.* at 11, though his prior bodily examinations and the constant video recording are "clear evidence that Bradley could not have had any metal in his possession . . . or any metal within his body prior to being taken to the dry cell," *see id.* at 18; Dkt. No. 1-2 at 8. Bradley was removed from the dry cell on April 12, 2022.

**a. Eighth Amendment claim**

The Court conducts clear error review of Magistrate Judge Freedman's recommendation that the Court find that Bradley has adequately alleged an Eighth Amendment conditions of confinement claim regarding his detention in the dry cell.[2] *See* Dkt. No. 51 at 19-21. The Eighth

[2] Defendants do object to Magistrate Judge Freedman's conclusion on this Eighth Amendment claim, but only on the ground that the pleadings fail to "plausibly allege[] that Defendants McIntosh, Frenya, and Santo were personally involved in creating or failing to remediate the conditions in [the dry cell]." Dkt. No. 52 at 4-5. But they do not object to the Magistrate Judge Freedman's substantive Eighth Amendment determination. *See id.* There is a question as to how much a personal involvement objection directly implicates the underlying merits. *See, e.g.*, *Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 433 (E.D.N.Y. 2009) ("The subjective prong of the two step analysis requires personal involvement of the prison official."); *Jones v. McCarthy*, No. 18-cv-947, 2019 WL 4396808, at *3 (N.D.N.Y. June 10, 2019), *report and recommendation adopted*, 2019 WL 4393072 (N.D.N.Y. Sept. 13, 2019) (noting the "same reasons identified . . . in the context of personal involvement" are often equally applicable to "the subjective prong of the applicable Eighth Amendment test"). Ultimately, however, it is unnecessary for the Court to draw the line separating the two here. Because the dry cell Eighth Amendment claim fails under either

Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). While the Eighth Amendment "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), prisons "must provide humane conditions of confinement," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "A claim . . . for violations of the Eighth Amendment" has two prongs: There is a subjective element, requiring a "'sufficiently culpable state of mind' on the part of the responsible official," and an objective element, requiring "an 'objectively, sufficiently serious . . . denial of the minimal civilized measure of life's necessities.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015) (quoting *Farmer*, 511 U.S. at 834). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

First, the Court applies the "the subjective[] prong analysis to each Defendant." *White v. Gutwein*, No. 20-cv-4532, 2022 WL 2987554, at *5 (S.D.N.Y. July 28, 2022). In a conditions of confinement case, "the deliberate indifference standard is the proper measure of the prison

---

clear error or *de novo* review, the Court subjects it only to the former. *Petersen*, 2 F. Supp. 3d at 228.

official's scienter," and it "must be applied in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns." *Trammell v. Keane*, 338 F.3d 155, 162-63 (2d Cir. 2003) (citing *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)). Of the three defendants at issue in this case—Santo, Frenya, and McIntosh—Bradley makes the strongest showing of scienter as to Santo. Taking Bradley's allegations as true, Santo falsely reported a positive canine drug indication, which created the impression that Bradley was smuggling contraband into Clinton. If Santo deliberately made a false report, he would have known that there was no actual reason to subject Bradley to the dry cell. Thus, Bradley has plausibly alleged that Santo acted with the knowledge that Bradley's dry cell confinement was "totally without penological justification," satisfying the subjective prong of the Eighth Amendment analysis. *Alli-Balogun v. United States*, 114 F. Supp. 3d 4, 46 (E.D.N.Y. 2015) (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)); *see H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 380 (N.D.N.Y. 2020) (holding that knowledge that a punishment was "totally without penological justification" satisfied the Eight Amendment's subjective prong).

However, the Court reaches a different conclusion as to whether Bradley has plausibly alleged that Frenya and McIntosh acted with the requisite mental state. A plaintiff must plead that every official against whom he presses a conditions of confinement claim "had a wanton state of mind when they were engaging in the alleged misconduct." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). But generally, supervisors are "entitled to rely upon the investigations completed by the facility officials and by their designated subordinates." *Silvagnoli v. Fischer*, No. 07-cv-561, 2010 WL 1063849, at *11 (N.D.N.Y. Mar. 1, 2010), *report and recommendation adopted*, No. 07-cv-0561, 2010 WL 1063840 (N.D.N.Y. Mar. 22, 2010), and *abrogated on other grounds by Widomski v. State Univ. of New York (SUNY) at Orange*, 748 F.3d 471 (2d Cir. 2014).

Plaintiffs' pleadings, even liberally construed, contain no facts supporting an inference that Frenya was aware that Santo's report was deliberately false. Even accepting an inference that the subsequent negative physical and X-ray examinations should have given Frenya pause regarding the reportedly positive drug detections, "the Eighth Amendment is only concerned with what [he] actually knew—not what he *should* have known." *Nicholson v. Fischer*, No. 13-cv-6072, 2018 WL 2009432, at *4 (W.D.N.Y. Apr. 30, 2018); *see Farmer*, 511 U.S. at 835 ("[D]eliberate indifference entails something more than mere negligence."). And this reasoning applies with even more force to McIntosh, as Bradley only alleges that he "asked defendant[] McIntosh . . . why he was on special watch when no evidence provided probable cause." Dkt. No. 1 at 10. Without more, merely hearing an inmate state that he is wrongly accused of transporting contraband does not suffice to meet the Eighth Amendment's scienter requirements. *Cf. Swift v. Tweddell*, 582 F. Supp. 2d 437, 446 (W.D.N.Y. 2008) ("[A] failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.").

Second, even assuming that Bradley has satisfied the subjective prong as to Santo, the Court finds that Bradley has not satisfied the objective prong. *See Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 240 (E.D.N.Y. 2023) ("A standard under which any conduct by a prison guard taken without penological justification exposes them to liability, no matter how small the harm inflicted, would eviscerate the objective prong of the Eighth Amendment."). "Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). Even reading Bradley's allegations liberally, the use of a dry cell to determine if a prisoner is smuggling contraband, and to retrieve that contraband before it is introduced into the prison, "cannot be said to be cruel and unusual under contemporary standards."

*Rhodes*, 452 U.S. at 347. Indeed, "this Court notes that the use of dry cells in prisons located within this Circuit is not unusual," as they are widely employed to deter and intercept contraband entering prisons. *Torres v. City of New York*, No. 17-cv-6604, 2019 WL 7602181, at *12 (S.D.N.Y. Aug. 14, 2019), *report and recommendation adopted*, 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019) (internal quotation omitted); *see Porter v. Bunch*, No. 16-cv-5935, 2019 WL 1428431, at *16 (S.D.N.Y. Mar. 29, 2019) (collecting cases). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Wolfish*, 441 U.S. at 546; *see Washington v. Harper*, 494 U.S. 210, 223 (1990) ("The legitimacy, and the necessity, of considering the State's interests in prison safety and security are well established by our cases."). All of the conditions present here—depriving Bradley of his normal clothing, recording him with video cameras, monitoring his human waste for several days, limiting access to toiletries designed to dispose of that waste, and subjecting his living space to constant lighting—bear a clear relation to these essential goals. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) ("[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."); *see also id.* ("[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.") (quoting *Block v. Rutherford*, 468 U.S. 576, 584 (1984)). Moreover, the use of a dry cell meets these needs without resort to more intrusive or violent methods for expelling contraband, such as forcible removal by correction officers. *See Torres*, 2019 WL 7602181, at *12 ("[U]pon determining that [prisoner plaintiff] had partially inserted contraband into his rectum, the Officer Defendants could have placed him in a dry cell to permit

him to expel the contraband, without any use of force at all.").

That does not, of course, mean that prison officials' actions taken in the name of interdicting contraband are immune from scrutiny under the Eighth Amendment. *See*, *e.g.*, *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (holding, in the context of a strip search, that "even if contact between an officer and an inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable."); *Thomas v. Tice*, 948 F.3d 133, 140 (3d Cir. 2020) (finding—after inmate spent four days in a dry cell, had twelve bowel movements aided by laxatives, and a subsequent X-Ray showed he had no gastrointestinal obstruction—a material issue of fact as to whether correction official's decision to keep him in the dry cell for *five more days* violated the Eighth Amendment). But Bradley has not alleged facts suggesting that he experienced "egregious circumstances" that would "rise to the level of cruel and unusual punishment." *Schult*, 717 F.3d 119, 127 (2d Cir. 2013); *see Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.") (citation omitted). Allegations of temporarily exposing a prisoner to constant lighting, substituting his personal clothing item for a smock, and controlling access to toiletries for several days do not state a claim for an Eighth Amendment violation—especially where Bradley "makes no reference to any harm or injury suffered as a result."[3] *Collins v. Fischer*, No. 15-cv-103, 2018

[3] In his responses to the Motion and Report-Recommendation, Bradley provides additional information regarding his time in the dry cell. Bradley experienced "denials of necessities, regular, clothing, showers, soap, rec, tooth paste, & washcloth," he was "permitted no time out of cell, denied corresponded with [Russell-Bradley], friends, family, no books, magazine, tablet, or religious services," Dkt. No. 46 at 20, and he was "required to sleep on only a piece of fabric on an extremely hard and cold surface that felt like concrete," Dkt. No. 55 at 11-12. Even accepting these allegations and considering them in combination with the pleadings, *see Harrison v. Cnty. of Nassau*, No. 15-cv-2712, 2016 WL 4083381, at *1 n.1 (E.D.N.Y. Aug. 1, 2016), they do not

WL 1626528, at *6 (S.D.N.Y. Mar. 30, 2018); *see*, *e.g.*, *id.* ("Even liberally construing Plaintiff's . . . Complaint to assume Plaintiff suffered sleep deprivation, merely alleging suffering 'some sleep deprivation . . . has consistently been held below the requisite severity for an Eighth Amendment claim.'") (quoting *Holmes v. Fischer*, No. 09-cv-829, 2016 WL 552962, at *17 (W.D.N.Y. Feb. 10, 2016)); *Jones v. Smith*, No. 09-cv-1058, 2015 WL 5750136, at *15 (N.D.N.Y. Sept. 30, 2015) (holding a constant illumination claim failed in part because "[p]laintiff does not allege any health effects . . . that would rise to the severity necessary to trigger Eighth Amendment concerns"); *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 374 (S.D.N.Y. 2018) (deprivation of toiletries, exercise, and recreation for four to five days "do[es] not rise to the level of being considered cruel and unusual treatment under the Constitution"); *Trammell*, 338 F.3d at 165 (deprivation of most toiletries for two weeks does not rise to the level of a constitutional violation); *Stewart v. Howard*, No. 09-cv-69, 2010 WL 3907137, at *3 (N.D.N.Y. Sept. 30, 2010) (holding that allegations prisoner was denied personal property for ten days were "not sufficiently serious to support an Eighth Amendment claim"); *Inesti v. Hogan*, No. 11-cv-2596, 2013 WL 791540, at *25 (S.D.N.Y. Mar. 5, 2013), *report and recommendation adopted*, 2013 WL 5677046 (S.D.N.Y. Sept. 30, 2013) ("While wearing a smock may be unpleasant, [plaintiff's] claim that he was denied clothing and only provided a smock does not rise to the level of a constitutional violation."). Accordingly, the Court dismisses Bradley's Eighth Amendment conditions of confinement claim regarding his dry cell detention.

**b. Due process claim**

Magistrate Judge Freedman also recommended that the Court find that Bradley adequately

---

identify any cell condition or harm experienced by Bradley that rises to the level of a constitutional violation.

states a procedural due process claim regarding his dry cell detention. *See* Dkt. No. 51 at 24-26. Because Defendants object, contending that Bradley "does not sufficiently allege any protected liberty interest" for the dry cell placement and accordingly the "due process claim . . . should be dismissed," Dkt. No. 52 at 9, the Court reviews this issue *de novo*. To state a claim for deprivation of procedural due process a plaintiff must allege that he (1) possessed a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process. *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019). "No right to due process is implicated in the prison context *unless* a liberty interest has been deprived." *Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998) (per curiam). But "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection," *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)), and "[d]istrict courts in this Circuit routinely hold that confinement . . . under ordinary SHU conditions, does not implicate a liberty interest protected by the Due Process Clause, even in the absence of detailed factual development," *Bell v. Saunders*, No. 20-cv-256, 2022 WL 2064872, at *6 (N.D.N.Y. June 8, 2022). *See Benedict v. Waby*, No. 25-cv-00691, 2026 WL 2042878, at *6 n.2 (N.D.N.Y. July 15, 2026) (noting that usual SHU conditions can include "confinement for 23 hours per day, one hour of recreation, no windows, limited privacy, access to paper and a pencil, restricted phone use, one visitor per week, and no items of personal clothing.") (quoting *Saunders*, 2022 WL 2064872, at *7).

Further, "[i]t is well-established that a prisoner's administrative classification does not give rise to a protected liberty interest under the Due Process Clause." *Caldwell v. Dep't of Corr. for City of New York*, No. 14-cv-5551, 2015 WL 428033, at *5 (E.D.N.Y. Jan. 30, 2015) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) and *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994)).

"Because prisoners have no liberty interest in being free from classification, they are also not entitled to due process before they are classified or prior to the imposition of conditions necessitated by their classification." *Robinson v. Sposato*, No. 13-cv-3334, 2014 WL 905580, at *4 (E.D.N.Y. Mar. 7, 2014) (quoting *Walker v. Shaw*, No. 08-cv-10043, 2010 WL 2541711, at *5 (S.D.N.Y. June 23, 2010)). Accordingly, "initial determinations . . . regarding the need to isolate plaintiff in a 'dry cell' do not give rise to cognizable [due process] claims against these officers." *Ramos v. New York State*, No. 17-cv-259, 2017 WL 5952201, at *3 (N.D.N.Y. Nov. 30, 2017).[4] While the Second Circuit has called for due process scrutiny when a "private interest" is "implicated by an extended and indefinite stay" in administratively classified detention, *Proctor v. LeClaire*, 846 F.3d 597, 610 (2d Cir. 2017), the four to five day detention alleged here is decidedly not extended or indefinite. *Cf. Ramos*, 2017 WL 5952201, at *3 (holding that confinement in a dry cell "for twenty-six days without review and authorization" plausibly alleged a due process claim on *sua sponte* review); *Benedict*, 2026 WL 2042878, at *7 n.3 (discussing recent Second Circuit caselaw suggesting that New York State's Humane Alternatives to Long-Term Solitary Confinement Act, which requires specific criteria to justify segregated confinement of more than *fifteen* consecutive days, may "benchmark the ordinary incidents of prison life in New York" for the purposes of liberty interest analysis) (quoting *Vidal v. Venettozzi*, 171 F.4th 611, 620-21 (2d Cir. 2026)). Accordingly, because Bradley fails to allege a liberty interest, his

[4] Bradley alleges that prison officials violated their "special watch procedure" because Bradley was required to make four bowel movements as opposed to the typical two. Dkt. No. 1 at 28; *see* Dkt. No. 55 at 11. But "[a]n alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'" *Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990)); *Porter*, 2019 WL 1428431, at *12 (citing cases); *see also* Dkt. No. 55 at 12 ("Plaintiff . . . submits that a violation of a DOCCS directive, by itself, does not automatically establish a federal constitutional violation.").

dry cell due process claim fails as a matter of law and the Court dismisses it.

**2. Confinement in the SHU**

On April 12, 2022, after Bradley was released from the dry cell, he alleges that he was taken to the Clinton SHU. Dkt. No. 1 at 11. Then, on April 15 and April 21, 2022, Bradley was subject to a detention hearing overseen by Deputy Superintendent for Health Services Harrigan for his alleged violation of prison rules relating to possession of a weapon and contraband due to the pieces of metal retrieved from his dry cell. *See* Dkt. No. 1 at 18-19. At the conclusion of the hearing Harrigan found that Bradley had violated both rules and imposed a sentence of "180 days SHU confinement, 180 days loss of packages and 180 days loss of commissary." *Id.* at 19, *see* Dkt. No. 1-2 at 16 (sentencing Bradley to eleven days of pre-hearing confinement and 169 days of post-hearing SHU confinement).[5]

[5] Bradley does not allege in the pleadings how much time he actually spent in SHU confinement, nor does he describe any of the conditions he experienced there. *See generally* Dkt. No. 1. Indeed, Bradley states that on or around May 30, 2022, he was transferred from Clinton to Sullivan, *see* Dkt. No. 8 at 11 n.6, and that thereafter he was placed into the CAR program from May 30, 2022 until August 14, 2022, *see* Dkt. No. 1 at 26. Defendants have indicated that the CAR program is an alternative to SHU confinement, implemented for prisoner populations with special needs. *See* Dkt. No. 40-3 at 26; *see also* Order Approving Class-Action Settlement at 34, *Peoples v. Fischer*, No. 11-cv-2694 (S.D.N.Y. Dec. 23, 2015), Dkt. No. 144 ("The CAR program shall . . . provide an alternative to SHU for certain inmates who . . . have significant limited intellectual capabilities and/or adaptive functioning and coping skills and have received SHU confinement sanctions exceeding 30 days."). The Court also notes that in Bradley's opposition to the Motion he only describes conditions in the CAR, not in the SHU. *See* Dkt. No. 46 at 21-22 ("[Bradley] was placed in the CAR program with limited privileges . . . [and] suffered from denial of 7 hours out of cell, recreation, cleaning supplies, personal property, visits, phone calls, commissary, packages, and religious service."). However, considering the requirement that *pro se* pleadings are to be liberally construed, for the purposes of this Motion the Court agrees with Magistrate Judge Freedman's conclusion that Bradley adequately alleges that he served the 180 days of SHU confinement to which he was sentenced, even if it may have involved some time in a CAR unit. *See* Dkt. No. 51 at 21-24, 26-33; *see also* Dkt. No. 55 at 14 ("[B]ecause the Residential Rehabilitation Unit . . . was overloaded . . . . CAR was . . . used as the location in which [Bradley] was required to serve restrictive disciplinary confinement sanctions, rather than because a mental-health professional evaluated him and determined that CAR was appropriate for him.").

**a. Eighth Amendment claim**

In the Report-Recommendation, Magistrate Judge Freedman correctly noted that the "complaint does not allege . . . Bradley was subjected to any conditions other than 'normal' conditions of SHU confinement . . . . [t]hus, . . . Bradley's Eighth Amendment claim based on his SHU confinement is necessarily based on the duration of his SHU confinement." Dkt. No. 51 at 22, *see supra* note 5. Magistrate Judge Freedman recommended, based solely on the alleged 180 days of confinement, that the Court permit the SHU Eighth Amendment claim to proceed. *See* Dkt. No. 51 at 24. Defendants object, contending that as a matter of law "180-day SHU confinement in and of itself" fails to establish "the objective element of an Eighth Amendment claim." Dkt. No. 52 at 9.

When a prisoner plaintiff alleges nothing more than 180 days of normal SHU detention, "[i]t is well settled in the Second Circuit that these conditions of confinement do not violate the Eighth Amendment." *Coleman v. Galgano*, No. 95-cv-5835, 1996 WL 715533, at *2 (S.D.N.Y. Dec. 11, 1996) (citing *Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985)); *see*, *e.g.*, *Miller v. Bradley*, No. 09-cv-1035, 2010 WL 3810001, at *4 (N.D.N.Y. Aug. 6, 2010), *report and recommendation adopted*, 2010 WL 3809995 (N.D.N.Y. Sept. 22, 2010) ("It is established law in this Circuit that confinement in a SHU, without more, does not constitute a violation under the Eighth Amendment."); *Bowens v. Smith*, No. 11-cv-784, 2013 WL 103575, at *10 (N.D.N.Y. Jan. 8, 2013), *report and recommendation adopted*, 2013 WL 103596 (N.D.N.Y. Jan. 8, 2013) (dismissing Eight Amendment claim resulting from 575 days of SHU confinement that failed to describe anything "other than the deprivations normally occurring in SHU" as legally insufficient); *Steele-Warrick*, 671 F. Supp. 3d at 240 (describing extended SHU stays as "routine conditions of confinement"); *Gulley v. Roach*, No. 02-cv-908, 2004 WL 2331922, at *12 (W.D.N.Y. Oct. 15,

2004) (holding a seven month SHU confinement did implicate the Eighth Amendment, and citing cases). Accordingly, the Court dismisses Bradley's Eighth Amendment claim arising from his SHU confinement.

**b. Due process claim**

As the Court has already noted, "[n]o right to due process is implicated in the prison context *unless* a liberty interest has been deprived." *Scott*, 156 F.3d at 287. However, "Defendants do not contest that the imposition of a 180-day SHU sentence implicates a liberty interest protected by the Due Process clause." Dkt. No. 51 at 27 n.7. Accordingly, the Court proceeds with the second part of the inquiry—whether Bradley was deprived of that interest without constitutionally adequate process. *Tooly*, 919 F.3d at 173. Magistrate Judge Freedman determined that Bradley adequately alleges that he "was not provided or was precluded from entering into evidence documentary, video, and/or testimonial evidence which would have established pieces of metal recovered from his Special Watch cell were either in the dry cell prior to his placement there, or planted by one or more Defendants," and accordingly recommended that the due process claim against the hearing officer, Harrigan, should proceed. Dkt. No. 51 at 32. Defendants do not challenge this recommendation, *see* Dkt. No. 52 at 6-8, and because the Court perceives no clear error it concludes that the claim against Harrigan may proceed.

However, Defendants do challenge the conclusion that procedural due process claims survive against three other defendants—Miner and McConnell, who testified at the hearing, and Rodriguez, who denied Bradley's appeal from hearing's disposition. For the reasons stated below, the Court dismisses the due process claims against all three.

**i. Miner and McConnell's testimony**

Bradley alleges that Miner and McConnell, who claimed they found the pieces of metal in

Bradley's dry cell, provided a false report and falsely testified during the disciplinary hearing. *See* Dkt. No. 1 at 16-18. Magistrate Judge Freedmen concluded that, "[l]iberally construed, the complaint alleges . . . Bradley was disciplined without due process as a result of . . . Miner and McConnell's false misbehavior report statements and hearing testimony." Dkt. No. 51 at 31. Defendants object, arguing that due process protections for disciplinary hearings do not prevent the admission of false reports or false testimony, and that "any alleged constitutional violations have to be separate and apart from the alleged false testimony by Defendants Miner and McConnell." Dkt. No. 52 at 8.

"Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as . . . special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted). But the Fourteenth Amendment due process protections afforded a prison inmate do not equate to "the full panoply of rights due to a defendant in a criminal prosecution." *Id.* at 69 (citation and internal punctuation omitted). The constitutionally mandated due process requirements include:

> (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense.

*Payne v. Coburn*, No. 15-cv-00392, 2017 WL 4330372, at *11 (N.D.N.Y. Aug. 29, 2017) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974) & *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004)), *report and recommendation adopted*, 2017 WL 4326079 (N.D.N.Y. Sept. 27, 2017).

"[A] prison inmate has no general constitutional right to be free from being falsely accused

in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986)). Consequently, the "filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (citing *Sommer v. Dixon*, 709 F.2d 173, 174-75 (2d Cir. 1983). "This principle extends as well to false testimony by corrections personnel at prison disciplinary hearings." *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (citing *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005)); *see Freeman*, 808 F.2d at 951-53 (analyzing separately allegations of false accusations against a prisoner and allegations of inadequate process at the hearing based on those allegations). In the face of a false report, and false testimony at a hearing in support of that report, the Due Process Clause looks to whether "procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him." *Mena v. New York*, No. 24-cv-1145, 2025 WL 1638032, at *8 (N.D.N.Y. June 10, 2025) (quoting *Mitchell*, 158 F. App'x at 349). The Court's focus must therefore be on whether Bradley was "disciplined without adequate due process as a result of the report"—a claim which is properly pressed against the hearing officer, not those officers who allegedly falsely testified. *Willey*, 801 F.3d at 63 (internal quotation omitted); *see Santana v. Olson*, No. 07-cv-0098A, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he claim is not based on [th]e truth or falsity of the misbehavior report but instead on the conduct of the hearing itself."). Accordingly, the Court dismisses the claims against Miner and McConnell.

**ii. Rodriguez's appeal review**

Magistrate Judge Freedman also recommended that a due process claim should proceed against Rodriguez, who allegedly denied Bradley's appeal challenging the outcome of his disciplinary hearing. *See* Dkt. No. 51 at 31. Defendants object, contending that Magistrate Judge

Freedman's analysis denying Rodriguez's personal involvement in the Eighth Amendment claim for Bradley's time in the SHU is equally applicable to the due process claim connected to that same SHU confinement. *See* Dkt. No. 52 at 6 ("[A]s the [Report-Recommendation] found as to Defendant Rodriguez, 'merely sitting in an appellate review capacity is insufficient to establish personal involvement because review and affirmation of the disposition of Plaintiff's disciplinary hearing is distinct from the alleged underlying constitutional deprivation.'") (quoting Dkt. No. 51 at 22-23).

Though the allegations failed to show, as a matter of law, that Rodriguez was personally involved in the Eighth Amendment claim, the Court must separately assess the allegations of Rodriguez's personal involvement in the due process claim because the "factors necessary to establish a [Section 1983] violation will vary with the constitutional provision at issue." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). To plead Rodriguez's personal involvement, Bradley must allege facts suggesting "proof of a *mens rea* greater than mere negligence," as is required for "any [Section] 1983 claim for a violation of due process." *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 632 (2d Cir. 2025) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017)). But Bradley's pleadings merely state that on August 17, 2022, "Rodriguez denied the reconsideration appeal and erroneously claimed that Bradley already sought discretionary review of this determination." Dkt. No. 1 at 22-23. Even reading this liberally to allege that Rodriguez recklessly denied the appeal on incorrect procedural grounds, *but see* Dkt. No. 1-2 at 64 (giving notice by letter that Bradley's appeal from his disciplinary hearing was reviewed and denied by another officer on June 8, 2022), the pleadings do not offer any facts showing that Rodriguez was aware of the alleged lack of process at the disciplinary hearing, or that he had the required mental state with regard to that alleged

constitutional violation. Accordingly, the Court dismisses Bradley's due process claim against Rodriguez.

**3. Transfer into the CAR program**

Magistrate Judge Freedman also recommended that the Court find that Bradley states a due process claim against Acting Superintendent Bennett for his placement into the CAR program at Sullivan. Defendants object, contending that Bradley's claim fails because there are "simply no allegations as to what Defendant Bennett did." Dkt. No. 52 at 13. The Court agrees with Defendants. The factual allegations in the complaint regarding Bradley's placement into the CAR program are as follows:

> [¶] 82A. The Correctional Alternative Rehabilitation program (CAR) is a mental health program at Sullivan. Bradley was placed into a car without compliance with procedural requirements (i.e. he was not seen by mental health specialist nor had Bradley underwent any mental health testings). Bradley remained wrongfully confined in CAR from May 30, 2022, to August 14, 2022. (See, grievances, exhaustion papers of the issue)

Dkt. No. 1 at 26. Then, as Bradley's Twelfth cause of action, he states:

> [¶] 94. Defendant Acting Supt. Stacie Bennett, by her actions described in paragraph 81A wrongfully confined Bradley in the CAR program without due process.[6]

Dkt. No. 1 at 29.

"[I]t is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Morabito v. New York,* 803 F. App'x 463, 466 (2d Cir. 2020) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). A

---

[6] The pleadings do not contain a paragraph 81A*, see generally* Dkt. No. 1, but the Court interprets this as a reference to paragraph 82A.

plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). "Pursuant to this requirement, a [Section] 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Keyes v. Venettozzi*, No. 18-cv-0372, 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) (citation and quotation marks omitted). In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F.Supp.3d 1, 20 (N.D.N.Y. 2021) (citation omitted).

While Bradley alleges that he was "placed into a [CAR] without compliance with procedural requirements," he does not identify the participation of any defendant in that placement. Dkt. No. 1 at 26. Bennett is later identified by name, but the allegations state nothing more than that she took "actions" which "wrongfully confined Bradley." Dkt. No. 1 at 29. Even granting these pleadings the "special solicitude" due to *pro se* plaintiffs, the "complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotation omitted). Plausibly alleging personal involvement requires more than stating a particular defendant took "actions"—it requires, at a minimum, stating what the defendant's "actions or omissions" were that caused the constitutional injury, and in what capacity the defendant took them. *Keyes*, 2022 WL 991402, at *6; *see Tangreti*, 983 F.3d at 618. The Court cannot determine from the present allegations how Bennett was involved in Bradley's placement in the CAR program, whether she acted in a personal or a supervisory capacity,[7] or whether she had the mens

[7] Factual assertions made in Bradley's legal filings responding to the Report-Recommendation, *see supra* note 3, strongly suggest that Bennett was involved solely in a supervisory capacity. *See* Dkt. No. 55 at 14-15 ("Plaintiff alleges that [Bradley] challenged his CAR placement through the facility grievance process and brought the matter to the attention of facility officials, including Acting Superintendent Bennett. Plaintiff alleges that Bennett became aware that he disputed the

rea required for this Section 1983 claim. Accordingly, the Court dismisses Bradley's due process claim against Bennett.

**4. First Amendment claim**

Bradley alleges that from April 26, 2022 until January 5, 2023, his visitation privileges with Russell-Bradley were suspended on suspicion that contact visits had been used to smuggle contraband into Clinton. *See* Dkt. No. 1 at 23-24. Magistrate Judge Freedman concluded that the allegations of this temporary suspension were "insufficient to establish a First Amendment violation," and recommended dismissal. Dkt. No. 51 at 16-18. Bradley's objections to this recommendation largely rehash arguments made in his briefing before Magistrate Judge Freedman, *see Petersen*, 2 F. Supp. 3d at 228-29 & n.6, but regardless of whether the Court reviews this portion of the Report-Recommendation *de novo* or for clear error it is unpersuaded that Magistrate Judge Freedman erred.

Plaintiffs contend that "the visitation restrictions were imposed or maintained for retaliatory reasons, unsupported, or punitive reasons connected to allegations that were not ultimately sustained." Dkt. No. 55 at 3-4; *see* Dkt. No. 46 at 19-20 (arguing the visitation restrictions were retaliatory and the contraband smuggling allegations were insufficiently supported). "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). "Courts must approach

---

propriety of his continuing CAR confinement . . . . [and d]espite that continuing challenge, Bennett did not cause [Bradley] to be released from CAR, and [he] recalls being informed, in substance, that his placement was considered proper.").

prisoner retaliation claims with 'skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (quoting *Dolan*, 794 F.3d at 295). "Moreover, 'claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.' For these reasons, we require that prisoner retaliation claims be 'supported by specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Id.* at 298-99 (first quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) and then quoting *Dolan*, 794 F.3d at 295).

Magistrate Judge Freedman correctly noted that not only were the allegations of retaliation raised for the first time by Bradley in opposition to Defendants' Motion, Dkt. No. 51 at 17, but further that they "wholly fail[] to identify what protected activity Plaintiff's visitation privileges were suspended in retaliation for here." *Id.* at 17-18 (citing Dkt. No. 46 at 18-20). That remains the case in Bradley's papers in opposition to the Report-Recommendation. *See* Dkt. No. 55 at 3-4. Without any "specific and detailed factual allegations" supporting the retaliation claim, *see Senecal*, 130 F.4th at 298-99, the Court agrees with Magistrate Judge Freedman that Bradley "failed to plead that the revocation of and restrictions to [Bradley's] spousal visitation privileges bore no rational relationship to legitimate penological interests," Dkt. No. 51 at 18. The suspension was issued in response to a suspicion that Bradley had smuggled contraband into Clinton, as supported by a canine's "'positive indication for narcotics on Bradley and on the nearby counter top behind him' as . . . Russell-Bradley [was] processed out of the April 8, 2022, visit with . . . Bradley at Clinton; the recovery of pieces of metal from . . . Bradley's dry cell on April 10, 2022; and . . . Bradley subsequently being found guilty of violating facility rules prohibiting weapons

and contraband on April 21, 2022." *Id.* at 17 (citing Dkt. No. 1 at 8-9, 11, 18-19). Restrictions on Bradley's visitation rights therefore plainly bore a "rational relation to legitimate penological interests," and were thus permitted by the First Amendment. *See id.* at 16 (quoting *Ford v. Fischer*, No. 09-cv-723, 2011 WL 856416, at *12 (N.D.N.Y. Jan. 31, 2011), *report and recommendation adopted*, 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011)); *Qasim v. Scully*, 708 F. Supp. 90, 91 (S.D.N.Y. 1989) ("That it is constitutionally permissible for prison officials to limit contact visitation rights to guard against [contraband] in prisons is beyond debate.") (citing *Block*, 468 U.S. at 586).

**B. Russell-Bradley's Claims**

Russell-Bradley also brings claims against several Defendants, contending that (1) she was subject to a canine sniff search in violation of the Fourth Amendment, (2) various defendants failed to intervene to prevent the sniff search, and (3) defendants made defamatory statements accusing her of criminally smuggling contraband into a prison. *See* Dkt. No. 1 at 18-20, Dkt. No. 51 at 34. Magistrate Judge Freedman reviewed these claims and identified two potential paths to resolving them on this Motion. First, the Report-Recommendation noted that "there is no dispute . . . Russell-Bradley has not properly effected service upon Defendants." Dkt. No. 51 at 37. Second, even though there was inadequate service of process, Magistrate Judge Freedman also determined "dismissal of . . . Russell-Bradley's claims on the merits may be warranted," Dkt. No. 51 at 40, and, after review, she concluded that all of Russell-Bradley's allegations failed to state a claim, *see* Dkt. No. 51 at 40-46. Though Magistrate Judge Freedman presented the Court with the option of resolving the Motion for inadequate service of process, given the Second Circuit's "strong preference for resolving disputes on the merits" the Court will proceed to the Report-Recommendation's analysis of Russell-Bradley's claims. *Williams v. Citigroup Inc.*, 659 F.3d

208, 212-13 (2d Cir. 2011); *see Keir v. Donaldson*, No. 25-cv-542, 2025 WL 3442904, at *5 (N.D.N.Y. Dec. 1, 2025) (declining to "to dismiss [a] Complaint . . . for lack of service" where it "is otherwise subject to dismissal" on the merits). With the limited exceptions discussed below, Russell-Bradley's objections to the Report-Recommendation largely reiterate the arguments made before Magistrate Judge Freedman, and so the Court principally reviews her determinations for clear error. *See Petersen*, 2 F. Supp. 3d at 229.

**1. Fourth Amendment**

As to Russell-Bradley's interrelated Fourth Amendment sniff search and failure to intervene claims, Magistrate Judge Freedman noted that "where an individual has no reasonable expectation of privacy, 'a canine sniff does *not constitute a search within the meaning of the Fourth Amendment*.'" Dkt. No. 51 at 41 (quoting *United States v. Iverson*, 897 F.3d 450, 461 (2d Cir. 2018)) (internal quotation omitted). Reasoning that "[c]ontacts between inmates and noninmates may justify otherwise impermissible intrusions into the noninmates' privacy," Dkt. No. 51 at 42 (quoting *United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988)), Magistrate Judge Freedman determined that sniff searches were among the "less invasive searches or seizures" that "are constitutionally permissible conditions on visitation even if not accompanied by any reasonable suspicion," Dkt. No. 51 at 41-42 (quoting *Amaker v. Annucci*, No. 14-cv-9692, 2016 WL 5720798, at *8 (S.D.N.Y. Sept. 30, 2016)). Accordingly, because the "alleged canine sniff at the prison does not constitute a search within the meaning of the Fourth Amendment," dismissal of Russell-Bradley's unlawful search and failure to intervene claims are warranted. Dkt. No. 51 at 42 (quoting *Aaron v. Keyser*, No. 21-cv-5258, 2023 WL 3466170, at *8 n.6 (S.D.N.Y. May 15, 2023)).

In her objections, Russell-Bradley contends that while "[s]ecurity interests in preventing contraband from entering a correctional facility are substantial," "those interests do not automatically justify every search after a visit has ended and the visitor is attempting to depart." Dkt. No. 55 at 16. As a general proposition, there are certainly situations in which prison officials may need to permit visitors to choose between forgoing a visit and undergoing an invasive search that would otherwise require reasonable suspicion. *See*, *e.g.*, *Gilmore v. Georgia Dep't of Corr.*, 144 F.4th 1246, 1257 (11th Cir. 2025) ("[A] prison visitor cannot be forced to undergo a strip search if she wants to leave the facility."); *Spear v. Sowders*, 71 F.3d 626, 632 (6th Cir. 1995) (en banc) ("[T]he same logic that dictates that such a [strip] search may be conducted only when there is reasonable suspicion also demands that the person to be subjected to such an invasive search be given the opportunity to depart."). But, in the context of this case, Russell-Bradley's objection is meritless. Both the Supreme Court and the Second Circuit have held that the use of a canine's sense of smell to identify narcotics "is not usually a search within the meaning of the Fourth Amendment." *Correction Officers' Benevolent Ass'n v. City of New York*, 192 F. Supp. 3d 369, 374 n.1 (S.D.N.Y. 2016) (citing *Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) and *United States v. Hayes*, 551 F.3d 138, 144 (2d Cir.2008)). There is little reason to believe that rule would be different in the context of visiting a prisoner, where the Second Circuit has instructed this Court that "otherwise impermissible intrusions into the noninmates' privacy" are permitted. *Willoughby*, 860 F.2d at 21; *see Aaron*, 2023 WL 3466170, at *8 n.6. Accordingly, the Court is unpersuaded by Russell-Bradley's objection, and adopts Magistrate Judge Freedman's analysis.

**2. Defamation and stigma-plus**

Russell-Bradley alleges that she was defamed by several correction officers' statements stemming from allegations that she had attempted to smuggle contraband into Clinton.

> Plaintiffs allege . . . "King issued an indefinite suspension of all visitation privileges for . . . Bradley with [. . . Russell-Bradley] premised upon: 'it is reasonable to assume you smuggled contraband into the facility,'" Dkt. No. 1 at 23, citing the April 26, 2022, letter from . . . King to . . . Russell-Bradley, see Dkt. No. 1-2 at 161-62, and . . . "LaMora and Jane Doe stated, in the presence of [other Defendants named in Plaintiffs' complaint] that 'they (. . . Bradley and [. . . Russell-Bradley]) have drugs on them, there must be something inside of him that she brought in.'" Dkt. No. 1 at 25.

Dkt. No. 51 at 44. Russell-Bradley also pleads that the "DOCCS computer system" notes that she "is only allowed non-contact visits because she brought narcotics into the facility." Dkt. No. 1 at 26. On the defamation claims, Magistrate Judge Freedman determined that it was "an issue of state law, not of federal constitutional law, and [it] therefore provides an insufficient basis to maintain a [Section] 1983 action." Dkt. No. 51 at 43 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). And to the extent that Russell-Bradley wished to press the defamation claim under New York state law, Magistrate Judge Freedman found that the allegations failed to "allege the identity of the speaker or the third party to whom any such statement was made," Dkt. No. 51 at 44 (quoting *Sanders v. City of Saratoga Springs*, 691 F. Supp. 3d 548, 563 (N.D.N.Y. 2023)), the claim was brought after the one-year New York statute of limitations, *see* Dkt. No. 51 at 45, and New York law "precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment," Dkt. No. 51 at 46 (quoting *Davis v. McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017)). As each of these is an independent and sufficient basis to dismiss the defamation claim on its merits, Magistrate Judge Freedman recommended the Court consider whether dismissal is warranted. *See* Dkt. No. 51 at 43-46.

Objecting, Russell-Bradley attempts to transform the alleged defamation into a federal constitutional claim. "Plaintiffs contend that the Court should consider whether the allegedly false

and stigmatizing statements, coupled with the state-imposed visitation restriction, plausibly state a federal stigma-plus theory." Dkt. No. 55 at 17 (citing *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) and *Sadallah*, 383 F.3d at 38). To adequately assert a stigma-plus claim, a plaintiff must "show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah*, 383 F.3d at 38 (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, 538 U.S. 1, 6-7 (2003)). Put differently, "[a] plaintiff must first prove the 'stigma,' i.e., the loss of reputation, and also the 'plus,' which is some other specific liberty interest deprivation which does not flow from the injured reputation." *Barber v. Winn*, No. 95-cv-1030, 1997 WL 151999, at *4 (N.D.N.Y. Mar. 31, 1997), *aff'd*, 131 F.3d 130 (2d Cir. 1997) (citing *Valmonte v. Bane*, 18 F.3d 992, 1000-02 (2d Cir. 1994)).

Even assuming that limitations on prison visitation are sufficient to support the "plus" element of a stigma-plus claim, *but see Paul v. Capra*, No. 20-cv-5154, 2022 WL 992845, at *9 (S.D.N.Y. Mar. 31, 2022) ("In the Second Circuit, inmates and inmate visitors do not have a protected liberty interest to contact visits.") (citation omitted), none of the alleged stigmatizing statements supports a Section 1983 claim. To prove stigma, a plaintiff must show that the offending statements were "sufficiently public to create or threaten a stigma." *Mudge v. Zugalla*, 939 F.3d 72, 80-81 (2d Cir. 2019) (quoting *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005)). As to the letter sent to Russell-Bradley, "a statement made only to the plaintiff, and only in private, . . . does not implicate a liberty interest." *Velez*, 401 F.3d at 87 (citing *Donato v. Plainview–Old Bethpage Cent. School Dist.*, 96 F.3d 623, 631-32 (2d Cir.1996)). Similarly, statements made between Defendants during the initial investigation at Clinton are not sufficiently public to create

or threaten stigma, *cf. Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03-cv-4359, 2013 WL 3491057, at *35 (E.D.N.Y. July 10, 2013) (holding that statements made during the private executive session of a school board meeting were insufficiently public), and neither are statements within DOCCS's internal database, *cf. Lynch v. Dep't of Educ. of City of New York*, 822 F. Supp. 3d 258, 286-87 (E.D.N.Y. 2026) (holding that statements within an agency's internal database are "insufficient to state a stigma plus claim where no statement about the plaintiff was published outside of the agency," and citing cases). Even if one of these statements adequately pleaded the prongs of a stigma-plus claim, "the plaintiff also must demonstrate that her liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). And, on the face of the pleadings, Russell-Bradley received adequate process—she submitted a complaint regarding her visitation status to DOCCS, which was reviewed, and "as a result of [Russell-Bradley's] . . . correspondence" the most severe restrictions on visitation were lifted. Dkt. No. 1 at 26; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.") (citing Henry J. Friendly, *"Some Kind of Hearing"*, 123 U. Pa. L. Rev. 1267, 1281 (1975)). For all of these reasons, Russell-Bradley's allegations do not support a stigma-plus claim.

Because the Court perceives no error in Magistrate Judge Freedman's analysis, it agrees with her reasoning and dismisses all of Russell-Bradley's claims on the merits.

### C. Leave to Amend

In their response to the Report-Recommendation, Plaintiffs request that the Court grant leave to amend their pleadings rather than dismiss the case with prejudice. *See*, *e.g.*, Dkt. No. 55 at 15, 17, 18. Before a court dismisses a *pro se* complaint, it should grant leave to amend "at least once[,] when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (citing Fed. R. Civ. P. 15(a)). Leave to amend should be granted "absent evidence of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monohan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275 283 (2d Cir. 2000). Because many of Bradley's claims could be improved by more detailed factual pleading—especially with regard to the personal involvement of various individual defendants and, to a lesser extent, the substance of his Eighth and Fourteenth Amendment claims—and in view of his *pro se* status, the Court grants him leave to amend.

An opportunity to amend is not required, however, where the defects warranting dismissal are substantive and repleading would be futile. *See Trombley v. O'Neill*, 929 F. Supp. 2d 81, 106-07 (N.D.N.Y. 2013) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)). The Court concludes that repleading would be futile as to Russell-Bradley's claims. Russell-Bradley's defamation claim is barred by the statute of limitations and New York law, and more detailed factual pleading will not save her Fourth Amendment claim as a canine sniff is not a search within the meaning of the Fourth Amendment and she had no reasonable expectation of privacy as a prison visitor. *See, e.g.*, *Reynolds v. Barrett*, 685 F.3d 193, 200 & n.5, 206 (2d Cir. 2012) (affirming denial of leave to amend where, *inter alia*, state law claims against prison officials were barred by the same New York statute as here); *Arnold v. KPMG LLP*, 334 F. App'x 349, 352-53 (2d Cir. 2009) (affirming denial of leave to amend where a claim was barred by a New York statute

of limitations); *Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th 548, 562 (9th Cir. 2022) (holding a district court properly denied leave to amend where it "correctly concluded that because [the plaintiff] ha[d] no reasonable expectation of privacy" therefore "no additional facts could possibly have cured the deficiency with [plaintiff's] constitutional claims"). As such, amendment is futile, and Russell-Bradley's claims are dismissed with prejudice and without leave to amend.

For the foregoing reasons, the Court partially adopts and partially rejects the Report-Recommendation.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 51, is **ADOPTED in part and REJECTED in part**; as set forth in Section III of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 40, is **GRANTED in part and DENIED in part**, as set forth in Section III; and the Court further

**ORDERS** that Bradley's (i) First Amendment free association claims based on the revocation of, and restrictions related to, his spousal visitation privileges; (ii) Eighth Amendment conditions of confinement claim based on his placement in the dry cell; (iii) Eighth Amendment excessive restrictive confinement claim based on his SHU confinement; (iv) Fourteenth Amendment procedural due process claim based on his placement in the dry cell; (v) Fourteenth Amendment disciplinary due process claims against defendants Miner, McConnell, and Rodriguez related to his confinement in the SHU; and (vi) Fourteenth Amendment due process claim based on his placement in the CAR program; are **DISMISSED**, and the Court further

**ORDERS** that Russell-Bradley's claims are **DISMISSED with prejudice**, and the Court

further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to timely file an amended complaint, this case shall proceed only as to Bradley's Fourteenth Amendment disciplinary due process claim against Harrigan related to his confinement in the SHU; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 29, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge